Entered: July 7th, 2020
Signed: July 7th, 2020



MICHELLE M. HARNER
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Gregory Trepetin, | * | Case No. 20-11718-MMH |
| | * | |
| Debtor. | * | Chapter 11 (Subchapter V) |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Chapter 11 of the U.S. Bankruptcy Code[1] offers businesses and individuals an opportunity to reorganize their financial affairs, including their business operations. The process allows the debtor to stay in possession of its assets while working with its creditors to develop a plan that achieves a beneficial result for all, or as many stakeholders as possible. The process can, however, be lengthy and expensive; in fact, it may be cost-prohibitive for some debtors that would otherwise benefit from a chapter 11 case. Congress recognized this dilemma, which often impacts smaller entities and individual business owners more significantly than others, and enacted the Small Business Reorganization Act of 2019 ("SBRA").

SBRA creates a new subchapter of chapter 11 of the Code ("Subchapter V"). Subchapter V in turn offers small business debtors, including individuals, a streamlined process and tailored tools for confirming a plan. To help facilitate the process, Subchapter V establishes certain deadlines that a debtor must meet to keep its case on track. These deadlines run from the date of the order for relief in the bankruptcy case but neither Subchapter V nor section 348(b) of the Code

---

[1] 11 U.S.C. §§ 101 et seq. (the "Code").

specifically adjust these deadlines when a case is converted to chapter 11 from another chapter of the Code. That is the procedural posture of this case.

The Debtor's motion seeking extensions of the SBRA deadlines requires the Court to grapple with a simple but important question: Is SBRA available to a debtor who first files a bankruptcy case under a chapter other than chapter 11 of the Code, but then determines that it is eligible for, and could benefit from, Subchapter V? For the reasons set forth below, the Court answers this question in the affirmative and sets extended deadlines for the Debtor under sections 1188 and 1189 of the Code. To hold otherwise would preclude a debtor, who has not engaged in any dilatory or wrongful conduct, from utilizing provisions of the Code specifically designed to help small businesses and their creditors.

I.      **Relevant Background**

The Debtor is an individual who operates a small business. The Debtor filed a chapter 7 case on February 10, 2020. ECF 1. The Debtor appears to have complied with his obligations under chapter 7 of the Code and to have been eligible for a discharge under section 727 of the Code.[2] The Chapter 7 Trustee entered a Report of No Distribution to Creditors, suggesting that the Debtor's chapter 7 case was a no asset case, on June 2, 2020. ECF 43. The only event of note in the Debtor's chapter 7 case was a motion for relief from stay filed by a creditor, which remains pending. ECF 22, 26, 62.

The Debtor filed a Motion to Convert Chapter 7 Case to Chapter 11 Subchapter V, and Request to Extend Deadlines (the "Conversion Motion") on June 11, 2020. ECF 46. By the Conversion Motion, the Debtor asked the Court to convert his chapter 7 case to one under

---

[2] The original deadline to object to the Debtor's discharge under Bankruptcy Rule 4004 was May 15, 2020, but that deadline was extended by Standing Order 2020-07, *In re: Covid-19 Pandemic Procedures*, Misc. No. 00-308 (D. Md. 2020); Standing Order 2020-05, *In re: Covid-19 Pandemic Procedures*, Misc. No. 00-308 (D. Md. 2020); *see also* Standing Order 2020-04, *In re: Covid-19 Pandemic Procedures*, Misc. No. 00-308 (D. Md. 2020) (providing guidance relating to procedural orders entered to facilitate Court operations during the COVID-19 pandemic).

2

Subchapter V, pursuant to section 706 of the Code. The Debtor also requested an extension of (i) the 60-day deadline for the Court to hold a status conference under section 1188 of the Code, and (ii) the 90-day deadline for the Debtor to file his plan under section 1189 of the Code. The Court granted the Debtor's request to convert his case to one under chapter 11, and the Debtor thereafter filed an amended petition electing to proceed under Subchapter V. ECF 48, 52. The Court deferred its decision on the requested deadline extensions to provide an opportunity for notice and hearing and supplemental briefing by the Debtor. ECF 48, 51. The Court has reviewed all of the relevant papers in this case, and the matter is now ripe for resolution.

## II. Jurisdiction and Legal Standards

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Under 28 U.S.C. § 157(a) and its Local Rule 402, the United States District Court for the District of Maryland has referred this case to the Court. This matter is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2). The Court has constitutional authority to enter final orders in this matter.

Various sections of the Code allow a debtor to convert a pending bankruptcy case from one chapter to another chapter of the Code, provided that the debtor is eligible to be a debtor under the new chapter. The Debtor made his conversion request under section 706 of the Code, which provides that "[t]he debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706. The Court entered an order granting the Debtor's request to convert his case to one under chapter 11. That action raises issues concerning the impact of the conversion on matters decided prior to conversion, pending, and to take place in this chapter 11 case.

Section 348 of the Code generally provides that the order for relief in the original case continues, with the same date, as an order for relief under the new chapter. 11 U.S.C. § 348(a). The order for relief does not take on the date of the conversion order, except in a few specific

3

instances. For example, section 348(b) states that "[u]nless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, 'the order for relief under this chapter' in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter." 11 U.S.C. § 348(b). Notably, section 1121 of the Code, identified in section 348(b), speaks to the time period for the filing of a plan in a standard chapter 11 case. Section 1121 is not applicable in a Subchapter V case. 11 U.S.C. § 1181(a). Rather, the filing of a plan in a Subchapter V case is governed by, among other things, section 1189 of the Code.

The Court considers the Debtor's requested extension of the section 1188 and 1189 deadlines against this backdrop.

### III.   Analysis

The filing of a bankruptcy petition, which constitutes the order for relief in a voluntary bankruptcy case, triggers a number of events and deadlines in a bankruptcy case. For example, the petition triggers an automatic stay of most actions and proceedings against the debtor, the debtor's property, and property of the estate. 11 U.S.C. § 362(a). It also creates the bankruptcy estate, which is augmented with certain postpetition property in chapter 11 cases. 11 U.S.C. §§ 541, 1115, 1186. Moreover, the debtor must take certain actions, such as assuming or rejecting executory contracts and unexpired leases or filing a plan within a certain number of days from the date of the petition or order for relief. *See, e.g.,* 11 U.S.C. §§ 365, 1121, 1189. Consequently, the date of the order for relief in any bankruptcy case, including a converted case, is important in determining the rights and duties of the debtor and its creditors.

This statement is particularly true in a Subchapter V case, as the debtor is the only party who may file a plan and has only a limited amount of time to do so. Indeed, in a conversion

situation as that before the Court, the Subchapter V case may be over before it even begins if certain deadlines cannot be extended.[3] The Court considers the impact of a conversion order on a Subchapter V case and the Court's ability to extend the relevant Subchapter V deadlines in turn below.

      **A.**     **The Statutory Deadlines and Conversion**

Two statutory deadlines under Subchapter V are relevant to this case and the Debtor's pending extension request. First, section 1188(a) of the Code requires the Court to hold a status conference in the Debtor's case "not later than 60 days after the entry of the order for relief under this chapter." 11 U.S.C. § 1188(a). Second, section 1189(b) of the Code mandates that the Debtor file its plan "not later than 90 days after the order for relief under this chapter." 11 U.S.C. § 1189(b).

Each of the statutory deadlines at issue may be extended under certain circumstances. For example, section 1188(b) provides that "[t]he court may extend the period of time for holding a status conference under subsection (a) if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1188(b). Likewise, section 1189 states, in relevant part, that "the court may extend the [90-day deadline] if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189. The Debtor posits that the conversion of his bankruptcy case from a chapter 7 to a chapter 11 case makes it impracticable for him to comply with these deadlines. He states, among other things, that he "should not be justly held accountable for needing an extension of the deadline[s]." ECF 46, at 2.

---

[3] The failure of a debtor under Subchapter V to timely file the status report required by section 1188(c) and the failure of the debtor to timely file the plan under section 1189(b), may constitute cause to dismiss or convert the case under sections 1112(b)(4)(F) and (b)(4)(J), respectively.

5

As an initial matter, the Court observes that the question before it would be resolved easily if the Debtor had converted his case to chapter 11 and was not a small business debtor. As noted above, section 348(b) resets a debtor's exclusive period for filing a plan in a standard chapter 11 case. Congress did not, however, make that same exception for chapter 11 plans under either section 1121(e) (in a small business case) or section 1189 (in a Subchapter V case). Although the omission of section 1121(e) might be understandable given the 300-day overall deadline imposed on small business cases under section 1121(e)(2),[4] it arguably is less aligned with the overarching purpose of SBRA and facilitating the reorganization of small businesses.[5] *See, e.g., In re Ventura*, 615 B.R. 1, 6 (Bankr. E.D.N.Y. 2020) ("These amendments, commonly referred to as the SBRA, were instituted to broaden the opportunity for small businesses to successfully utilize the benefits of chapter 11 of the Bankruptcy Code."). Nevertheless, the Court must implement the Code as written and cannot ignore the mandate of section 348(a) and the omission of any Subchapter V deadlines from section 348(b).

In so doing, the Court will scrutinize the statutory language and consider the context in which the issues arise. Indeed, the Court cannot interpret any one statutory provision in a vacuum. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[S]tatutory language cannot

---

[4] Congress enacted section 1121(e)(2) as part of the Bankruptcy Abuse and Consumer Protection Act of 2005. Many courts and commentators have interpreted the deadlines set forth therein as absolute, drop dead deadlines. *See, e.g., In re Castle Horizon Real Estate, LLC*, No. 09-05992-8-JRL, 2010 WL 3636160, at *2 (Bankr. E.D.N.C. Sept. 10, 2010) (rejecting argument that the 300-day deadline in section 1121(e) addresses only the debtor's failure to file a plan and stating that "Congressional intent supports the opposite—that the 300–day deadline is a 'drop dead' provision to limit the amount of time for filing plans. The timing requirements of § 1121(e) reflect 'Congressional intent that plan filing time limits be strictly followed,' ... and are 'a clear example of Congress' attempt to keep small business cases on a short leash.' ...") (citations omitted); *see also* Robert M. Lawless, *Small Business and the 2005 Bankruptcy Law: Should Mom and Apple Pie Be Worried?*, 31 S. Ill. U. L.J. 585, 586–87 (2007) ("Although the [National Bankruptcy Review Commission] did not have all the facts at the time it acted and later studies suggested it may have had the wrong facts, a majority voted for strong recommendations to restrict small business debtors in bankruptcy, to allow for easier dismissal, to require more disclosure, and to get small business debtors out of bankruptcy court more quickly. These NBRC recommendation largely formed the basis for the small business provisions in the 2005 bankruptcy law.").

[5] In addition, section 348(b) resets the 90-day deadline for filing a plan in a chapter 12 case. As explained below, the language of section 1189 at issue here follows that in section 1221, which sets the 90-day deadline in chapter 12 cases.

be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."); *see also Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70–71 (2011) ("This reading of 'applicable' also draws support from the statutory context.").[6] The Court acknowledges that Congress contemplated an accelerated process for Subchapter V cases, likely as a means to facilitate quicker and cheaper reorganizations.[7] Congress also expressed, however, significant concern for small business debtors, wanting to provide them with a realistic option for reorganizing and saving their business operations.[8] Evidence of this intent is found not only in public commentary but also, more importantly, in the language of Subchapter V itself. For example, Subchapter V allows only the debtor to file a plan and permits the debtor to retain its prepetition ownership structure even if creditors are not paid in full. *See* 11 U.S.C. § 1184; ALAN N. RESNICK & HENRY J. SOMMER, 7 COLLIER ON BANKRUPTCY ¶ 1129.04[3][d] (16th ed. 2020). The Court thus

---

[6] *See also United States v. Morton*, 467 U.S. 822, 828 (1984). "In determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation. The meaning or ambiguity of certain words or phrases may only become evident when placed in context." *In re Sours*, 350 B.R. 261, 266 (Bankr. E.D. Va. 2006) (quoting *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)) (citations omitted).

[7] For example, in his public comments describing the purpose of the act, one legislator noted:
> "The Small Business Reorganization Act is a tremendous step forward in streamlining bankruptcy procedures. By reducing unnecessary procedural burdens, enhancing oversight and increasing the debtors' ability to negotiate, we will ensure quick and successful reorganization and provide small businesses the ability to restructure in a way that meets their needs. I thank my colleagues for their work on the introduction of this bill and urge for its timely consideration in both the House and Senate," Rep. Marino said.

*Small Business Reorganization Act*, Am. Bankr. Inst. J., January 2019, at 8, 8.

[8] Again, although not formal legislative history, legislators who worked on SBRA stated at the time of the bill's passage:
> "We've worked with the National Bankruptcy Conference, ABI and National Conference of Bankruptcy Judges to develop this legislation and have incorporated feedback from numerous stakeholders, ranging from commercial lenders to the U.S. Trustee," Sen. Grassley said. "A well-functioning bankruptcy system, specifically for small businesses, allows businesses to reorganize, preserve jobs, maximize the value of assets and ensure the proper allocation of resources. To that end, I've been working to improve the Bankruptcy Code for decades and will continue that effort."
> …
> "Small businesses are some of the best innovators in our local economies, and this bill would bring much-needed improvements to the Bankruptcy Code so that owner-operated businesses can recover from financial hardship and continue creating jobs," Rep. Collins said.

*Small Business Reorganization Act*, Am. Bankr. Inst. J., January 2019, at 8, 8.

will strive to balance these goals of speed and access to a realistic reorganization scheme in applying the language of the Code to the facts of this case.

### B.    The Statutory Deadlines in This Case

At the time of conversion of this case, both the 60-day deadline under section 1188(a) and the 90-day deadline under section 1189(b) had expired. The Debtor filed his original chapter 7 case on February 10, 2020, theoretically setting the section 1188(a) deadline as April 10, 2020, and the section 1189(b) deadline as May 11, 2020. The Debtor requested an extension of the relevant deadlines simultaneously with seeking a conversion of his case to one under chapter 11 and expressing his intention to make a Subchapter V election. The Debtor's extension request was arguably timely from that standpoint but certainly was sought after the expiration of the original deadlines.

Neither section 1188 nor section 1189 speak to the mechanics or timing of an extension request.[9] Both sections do, however, limit the permissibility of extensions "to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. §§ 1188(b), 1189(b). The legislative history to Subchapter V does not explain the purpose of this language or the scope of permissible extensions.[10] Likewise, at this point, only a few courts have had an opportunity to

---

[9] Similarly, no provision of Subchapter V or the Code required the Debtor to seek an extension of the applicable deadlines prior to their expiration.

[10] The legislative history to SBRA is not extensive. The Congressional Record appears to include only statements made from the Senate floor by the Senate Majority Leader, Mitch McConnell, related only to the lack of public debate and ultimate passage of the bill. *See* 165 CONG. REC. S5321 (daily ed. Aug. 1, 2019).

address the issue.[11] The Court finds these decisions, as well as those discussing similar language in section 1221, helpful in resolving the present matter.[12]

Section 1221 provides that "[t]he debtor shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend such period if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1221. Several aspects of Subchapter V are premised on the provisions of chapter 12 of the Code for family farmers and fishermen, including the deadline for filing the proposed plan. Courts and commentators generally have interpreted the language in section 1221 to require that "the debtor 'clearly demonstrates that the debtor's inability to file a plan is due to circumstances [ ] beyond the debtor's control.' COLLIER, *supra*, at ¶ 1221.01[2]." *In re Gullicksrud*, No. 16-11860-12, 2016 WL 5496569, at *2 (Bankr. W.D. Wis. Sept. 29, 2016);[13] *see also In re Marek*, No. 11-21158-TLM, 2012 WL 2153648, at *8 (Bankr. D. Idaho June 13, 2012); *In re Raylyn AG, Inc.*, 72 B.R. 523, 524 (Bankr. S.D. Iowa 1987). As observed in *Collier*, "[b]ecause chapter 12 lacks the safeguards for creditors that are provided in chapter 11, the 90-day

---

[11] *In re Progressive Sols., Inc.*, No. 8:18-BK-14277-SC, 2020 WL 975464 (Bankr. C.D. Cal. Feb. 21, 2020) (extension of statutory deadline was permissible to allow debtor to amend chapter 11 petition to one under SBRA as the delay in filing was not attributed to the debtor); *In re Ventura*, 615 B.R. 1 (Bankr. E.D.N.Y. 2020) (absent an explicit prohibition by Congress, a bankruptcy court may extend or reset deadlines under SBRA); *see also In re Moore Properties of Pers. Cty., LLC*, No. 20-80081, 2020 WL 995544, at *1 (Bankr. M.D.N.C. Feb. 28, 2020) (the revised definition of a small business debtor under SBRA is broader and excludes only those cases identified to include single asset real estate).

[12] *See, e.g.,* Charissa Potts, *Key Facts About the SBRA*, Am. Bankr. Inst. J., December 2019, at 8, 8 ("The phrase 'circumstances for which the debtor should not justly be held accountable' can be found in 11 U.S.C. §§ 1221 and 1228, the plan-filing and discharge provisions under chapter 12, and 11 U.S.C. § 1328, the discharge provision under chapter 13."). Section 1328(b) provides that the Court may grant a chapter 13 debtor a hardship discharge only if, among other things, "the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1328(b)(1). Courts generally hold that this section requires a fact-intensive analysis and focuses on the foreseeability and materiality of the debtor's change in circumstances, as well as whether it was within the debtor's control. *See In re Quintyne*, 610 B.R. 462, 469 (Bankr. S.D.N.Y. 2020); *see also In re Bandilli*, 231 B.R. 836, 840 (B.A.P. 1st Cir. 1999).

[13] The Court in *Gullicksrud* noted that Congress changed the language of section 1221 to its current form in 1993 to make it a more stringent standard. *Id*.

9

limitation . . . is the primary protection for creditors against a debtor's languishing in chapter 12 without confirming a plan." COLLIER, *supra* at ¶ 1221.01[2].[14]

The Court finds it appropriate to apply a standard similar to that articulated in *Gullicksrud* to sections 1188(b) and 1189(b) and the facts before it. Not only does that standard align with the Court's understanding of the Subchapter V deadlines but it also reflects the plain meaning of the words of the statute. Indeed, "justly" in this context is commonly defined as "in accordance with justice, law, or fairness" and "accountable" as "responsible" or "liable to be called to account or to answer for responsibilities and conduct." *Justly*, OXFORD ENGLISH DICTIONARY ONLINE, oed.com/view/Entry/102238?redirectedFrom=justly#eid (last visited July 7, 2020); *Accountable*, OXFORD ENGLISH DICTIONARY ONLINE, oed.com/view/Entry/1198?redirectedFrom=accountable#eid (last visited July 7, 2020). The question thus becomes whether the Debtor is fairly responsible for his inability to timely submit his status report, attend the status conference, or file a plan in this Subchapter V case.

As a procedural matter, the Debtor appears to have done all he could to act timely in this Subchapter V case. He filed his requested extensions and Subchapter V election timely in connection with the conversion of his chapter 7 case to one under chapter 11. Similarly, since a chapter 7 debtor is not required or permitted to file a plan, the Debtor has not been dilatory in the plan process itself and appears to have complied with all his obligations under chapter 7 of the

---

[14] Subchapter V and chapter 12 are not identical, and invoking chapter 12 standards may not be warranted in every instance. Subchapter V starts with chapter 11 as its base and then draws on the structure of chapter 12, certain elements of chapter 13, and the recommendations of the American Bankruptcy Institute's Commission to Study the Reform of Chapter 11 and the National Bankruptcy Conference. *See* Michael C. Blackmon, *Revising the Debt Limit for "Small Business Debtors": The Legislative Half-Measure of the Small Business Reorganization Act*, 14 Brook. J. Corp. Fin. & Com. L. 339, 344–45 (2020) (summarizing the history of SBRA and some of the work of the American Bankruptcy Institute and the National Bankruptcy Conference that underlies the act). Subchapter V is designed to reduce identified barriers to small business reorganizations. *See id*. (including the reports cited therein); *see also supra* notes 7 and 8. Nevertheless, with respect to the 90-day filing deadline, not only does the same language appear in sections 1189(b) and 1221 but both processes also remove the absolute priority rule as a confirmation standard. *See* COLLIER, *supra* at ¶ 1221.01[2] n. 10. This additional similarity between Subchapter V and chapter 12 further supports applying a consistent standard to a requested extension of the 90-day deadline for filing a Subchapter V or a chapter 12 plan.

Code.[15] No party has alleged that the Debtor is acting in bad faith or engaging in wrongful or dilatory conduct in either his chapter 7 case or in the process of conversion. As such, upon initial inquiry, the Debtor's need for an extension appears fairly attributable to factors outside of his control, namely the conversion process and requirements of chapter 7 versus chapter 11 of the Code.

Before definitely reaching that conclusion, however, the Court needs to consider the Debtor's decision initially to file a chapter 7 case and the timing of his requested conversion to chapter 11. The Debtor commenced his chapter 7 case in early February 2020, before the effective date of Subchapter V.[16] The Debtor did not move to convert his case after the effective date and, in fact, waited over four months to seek conversion. At the time of the requested conversion, a contested motion for relief from stay was pending and remains outstanding.

The Court can envision a case in which the circumstances surrounding conversion could weigh against any extension of the deadlines under Subchapter V. For example, if the Debtor were manipulating the timing of his original bankruptcy filing and his requested conversion in a manner that unfairly prejudiced some or all of his creditors, an extension would not be warranted. Likewise, if the Debtor failed to comply with his obligations under the Code in his original bankruptcy case or commenced his case after the effective date of SBRA and had missed a plan

---

[15] As previously noted, certain deadlines in the Debtor's chapter 7 case were extended by the District Court's Standing Orders because of the novel COVID-19 pandemic. *See supra* note 2. It is not clear whether these circumstances impacted the general administration of the Debtor's chapter 7 case or his conversion of the case to one under chapter 11. The Court does not need to consider this potential, however, given the facts of this case and the existing grounds to grant the Debtor's requested extension of the section 1188 and 1189 deadlines.

[16] Although the Debtor commenced his bankruptcy case before the effective date of SBRA, the Debtor is still eligible to invoke its provisions. As the court explained in *Moore Properties*,

> The application of subchapter V in this case creates none of the taking or retroactivity concerns expressed by the Court in *Landgraf* and *Security Industrial Bank*. Subchapter V incorporates most of existing chapter 11, and, with two main exceptions of no effect here, does not alter the rubric under which debtors may affect pre-petition contractual rights of creditors, much less vested property rights.

*In re Moore Properties of Pers. Cty., LLC*, No. 20-80081, 2020 WL 995544, at *4 (Bankr. M.D.N.C. Feb. 28, 2020); *see also In re Bello*, 613 B.R. 894 (Bankr. E.D. Mich. 2020) (a debtor may elect to proceed under SBRA even if the case was pending before the effective date of the act).

deadline prior to requesting conversion or making a Subchapter V election, then perhaps an extension would not be warranted. Again, the analysis must be fact-intensive and focused on the Debtor's conduct and potential prejudice to creditors.

Here, the Debtor has attributed his requested extension to the timing of the case conversion, and no party has disputed that justification. The Court also observes that the party who filed the relief from stay motion in the Debtor's chapter 7 case had notice of the requested deadline extensions and has not raised any opposition to the request. The Court thus concludes on balance that the Debtor should have access to Subchapter V of the Code and has established adequate grounds to extend the deadlines imposed by sections 1188 and 1189 of the Code in this case.

### IV.     Conclusion

Based on the record before the Court, the Debtor timely sought an extension of the section 1188 and 1189 deadlines and should not be held justly accountable for his inability to meet those deadlines. The Court will set extended deadlines for the Debtor, based on the date of the conversion of his chapter 7 case to one under chapter 11 of the Code. The Court will enter a separate order consistent with this Memorandum Opinion.


cc:   Debtor
      Debtor's Counsel
      U.S. Trustee
      All Creditors


**END OF MEMORANDUM OPINION**